UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DEBORAH KIMREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CV-289-HBG |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| performing the duties and functions not | ) | |
| reserved to the Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 and 17]. Deborah Kimrey ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I. **PROCEDURAL HISTORY**

On November 11, 2014, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on October 30, 2011. [Tr. 171-73, 188]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 121-22]. A hearing was held on September 21, 2016. [Tr. 55-75]. On February 3, 2017, the ALJ found that

Plaintiff was not disabled. [Tr. 37-49]. The Appeals Council denied Plaintiff's request for review [Tr. 1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 7, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2016.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 30, 2011 through her date last insured of December 31, 2016 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: asthma, sleep apnea, obesity, and depression (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she must avoid concentrated exposure to pulmonary irritants and hazards. The claimant could occasionally climb ladders, ropes, or scaffolds and frequently climb ramps or stairs. Additionally, she could frequently stoop, kneel, crouch, and crawl. Mentally, she could perform simple one-to-two step tasks.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work. (20 CFR 404.1565).

> 7. The claimant was born on August 3, 1956 and was 60 years old, which is defined as an individual of advanced age, on the date last insured. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 30, 2011, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(g)).

[Tr. 39-48].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, because the ALJ failed to properly (1) evaluate the opinion of consultative examiner, Jeffrey Uzzle, M.D.,

and (2) identify other work at step five that Plaintiff could perform in the national economy. [Doc. 15 at 10-16]. The Court addresses each contention in turn.

### A. Jeffrey A. Uzzle, M.D.

Plaintiff argues that the ALJ erred when he assigned "great weight" to Dr. Uzzle's opinion without incorporating Dr. Uzzle's standing and walking restrictions. [Doc. 14 at 10-12]. Plaintiff submits that the ALJ failed to explain how the opinion could receive great weight without concurring with the related limitations. [*Id.*]. According to Plaintiff, Dr. Uzzle's walking and standing limitations conflict with Plaintiff's RFC for medium work. [*Id.* at 12-14].

On January 12, 2015, Dr. Uzzle consultatively examined Plaintiff who complained of bronchitis, asthma, sleep apnea, chronic obstructive pulmonary disease ("COPD"), a spot on her lungs, bone spurs in her feet, irritable bowel syndrome, over active bladder, memory loss, confusion, shortness of breath, and obesity. [Tr. 359-61]. On examination, Dr. Uzzle noted that Plaintiff was obese with mild edema in both lower extremities distally, but she had normal station and gait, could toe walk, heel walk, tandem walk, and perform deep knee bends, and climbed on and off the exam table without difficulty and did not use an assistive device. [Tr. 360]. Plaintiff had mild to moderate pain behaviors, mild hearing loss on the right, clear lungs bilaterally with good air movement, negative straight leg raise testing in the sitting and supine position, full range of motion in the spine and extremities, and normal reflexes, strength, sensation and muscle tone. [Tr. 361]. Based on his examination of Plaintiff and a review of her medical records, Dr. Uzzle assessed stage II hypertension, obesity, mild hearing loss on the right, chronic abdominal pain with a history of colitis and irritable bowel syndrome, and mild edema in the lower extremities. [*Id.*].

In a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" completed contemporaneously with the consultative examination, Dr. Uzzle opined that Plaintiff

6

had the following functional limitations in an eight-hour workday: she could lift and carry up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally; she could sit for two hours at one time but up to six hours total, she could stand for one hour at one time but up to four hours total, and she could walk for one hour at one time but up to four hours total; she could continuously use her hands to reach, handle, finger, feel, push, and pull; she could continuously use her feet to operate foot controls; she could frequently perform all postural activities; and she could frequently be exposed to unprotected heights, moving mechanical parts, and operation of a motor vehicle. [Tr. 362-66].

In the disability decision, the ALJ discussed Dr. Uzzle's examination and opinion, concluding that the opinion was entitled to "great weight." [Tr. 45]. The ALJ found the opinion supported by Dr. Uzzle's limited examination findings which were consistent with the evidence of record. [*Id.*]. Specifically, the ALJ found that the medical evidence of record consisted of documented respiratory complaints but without evidence of debilitating problems as symptoms were largely manageable with treatment and exacerbations were sporadic. [Tr. 42-43, 45]. In addition, the ALJ found that the medical evidence indicated that Plaintiff was obese but that her weight did not impact her ability to perform the exertional demands of medium work [Tr. 43-44].[1] Moreover, a nonexamining state agency physician opined at the initial level in January 2015 that Plaintiff's statements regarding the severity of her respiratory problems was not substantiated by the objective evidence of record which demonstrated that Plaintiff's COPD was very mild without frequent exacerbations and her obesity did not limit her mobility. [Tr. 46, 84]. At the

---

[1] Evidence was also presented regarding Plaintiff's mental health. However, because Plaintiff only challenges the ALJ's finding regarding physical limitations, the Court need not discuss Plaintiff's mental-health history or the ALJ's related findings.

reconsideration level in April 2015, a second nonexamining state agency physician determined the frequency of asthma attacks reported by Plaintiff on an asthma questionnaire was not confirmed by the medical evidence which also failed to substantiate Plaintiff's allegation of limited activities of daily living. [Tr. 46, 102]. Both state agency physicians opined that Plaintiff could perform medium work, including that Plaintiff could stand and/or walk for six hours and sit more than six hours in an eight-hour workday. [Tr. 82-83, 99-101].

Plaintiff argues that Dr. Uzzle's opinion provides standing and walking limitations that are at odds with the exertional demands of medium work, and the ALJ's failure to explain why Dr. Uzzle's standing and walking limitation were rejected despite the opinion purporting to receive great weight constitutes reversible error. The Court finds no merit in Plaintiff's contention. Plaintiff has not cited to any authority for the proposition that Dr. Uzzle's walking and standing limitations are outside the scope of medium work. While the regulations do not state how often a claimant must be able to stand or walk, *see* 20 C.F.R. § 404.1567(c), Social Security Ruling 83-10 explains, "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." 1983 WL 31251, at *6 (Jan. 1, 1983). Here, Dr. Uzzle opined that Plaintiff can walk for four hours and stand for four hours in an eight-hour workday. This would appear to satisfy the ruling's requirement that a claimant be able to stand and/or walk for approximately six hours in an eight-hour workday.

Even if the Court were to find Dr. Uzzle's standing and walking limitations inconsistent with the exertional demands of medium work, substantial evidence nonetheless supports the ALJ's decision. When an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore,

8

procedurally inadequate, or that the RFC was not supported by substantial evidence." *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013); *see Newsome v. Astrue*, No. CIV. 11-1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (rejecting the plaintiff's argument that by giving great weight to a consultative examiner's opinion, the RFC assessment should have perfectly tracked the examiner's opinion). "[A]n ALJ is not required to explain each limitation or restriction he adopts or, conversely, does not adopt from a consultative examiner's opinion. While an ALJ must consider medical opinions, the RFC determination is expressly reserved to the Commissioner." *Purtty v. Comm'r of Soc. Sec. Admin.*, No. 1:13 CV 1204, 2014 WL 3510991, at *9 (N.D. Ohio July 10, 2014) (citations omitted). In the instant case, the ALJ also gave great weight to the opinions of the nonexamining state agency physicians who opined that Plaintiff can walk and/or stand for approximately six hours in an eight-hour workday which meets the requirements of medium work. Moreover, the ALJ discussed the medical evidence pertaining to Plaintiff's respiratory problems and obesity, concluding that neither impairment impacted Plaintiff's functional abilities to work at the medium exertional level.

Accordingly, the Court finds the ALJ did not err in his assessment of Dr. Uzzle's opinion, and Plaintiff's contention to the contrary is not well taken.

**B.     Step Five**

Plaintiff asserts that the ALJ's step five finding that Plaintiff could perform the job of seed cutter[2] is not supported by substantial evidence, because the hearing transcript contains inaudible

---

[2] The Court notes that the ALJ's decision states "seat" cutter, rather than "seed" cutter. [Tr. 48]. However, the VE testified that the job was a "seed" cutter [Tr. 71-72], and both the VE and the ALJ reference *Dictionary of Occupation Titles* # 404.686-010 which likewise identifies the job as "seed" cutter [Tr. 48, 71-72]. The ALJ's misstatement appears to be a typographical error, and the parties do not contend that the misstatement adversely impacted the ALJ's decision.

portions of the vocational expert's ("VE") testimony. [Doc. 15 at 14-15]. As a result, Plaintiff submits that the VE's testimony is confusing as to whether work existed in the national economy that Plaintiff could perform. [*Id.* at 15]. Moreover, Plaintiff argues that the ALJ failed to address whether the number of seed cutter jobs available constituted a significant number within the economy. [*Id.* at 16].

During the hearing, the ALJ asked the VE whether other jobs existed in the national economy that could be performed by an individual with the same age, education, work experience, and RFC of Plaintiff. [Tr. 70]. After identifying two jobs classified as light work, the VE stated as follows:

> Next, now, I'm in occupation title (INAUDIBLE), so here is street cleaner. Well, this is (INAUDIBLE). You have seed cutter. This is 404.686-010, medium physical demand, SVP: 1, making it unskilled work. For the occupations I cited previously, I've done a good deal of work to exact the estimates of employment numbers; but for this one, I did not do extra work. So, I'm going to (INAUDIBLE). They say there are 270,000, and divide by 19, because there are 19 occupations in the group (INAUDIBLE). That leaves me with a rough, rough, estimate of 14,000 workers in this occupation.

[Tr. 71]. In the disability determination, the ALJ relied on the foregoing testimony, finding that other work existed in the national economy that Plaintiff could perform including "the *medium unskilled* job of se[ed] cutter (DOT # 404.686-010) of which there are 270,000 such jobs in the United States that would be divided by 19 resulting in a 'rough estimate' of 14,000 workers in this occupation." [Tr. 48] (emphasis in original).

Plaintiff contends that the inaudible portions of the VE's testimony fail to provide substantial evidence that Plaintiff can perform the job of seed cutter. Caselaw from this circuit suggests that inaudible portions of a hearing transcript will not be grounds for remand absent the

missing portions preventing judicial review. *See Jackson v. Colvin*, No. 1:14-CV-873, 2016 WL 625243, at *9 (S.D. Ohio Jan. 25, 2016) (finding that the inaudible portions of the hearing transcript did not interfere with the court's ability to review the ALJ's decision), *adopted sub nom.*, *Jackson v. Comm'r of Soc. Sec.*, No. 1:14CV873, 2016 WL 614493, at *1 (S.D. Ohio Feb. 16, 2016); *Moore v. Colvin*, No. CIV.A. 13-128-HRW, 2014 WL 4748475, at *3 (E.D. Ky. Sept. 23, 2014) (distinguishing cases where remand was appropriate from the instant case in which the court concluded that the inaudible portions "did not prevent the ALJ from discerning the meaning of the missing portions, and likewise do not prevent this Court from conducting a thorough review"); *Yuhanick v. Comm'r of Soc. Sec.*, No. 5:09CV0907, 2010 WL 3092907, at *3 (N.D. Ohio July 21, 2010) ("In this Court's opinion when that evidence is viewed in the full context of the record it is clear what the import of the questions and response was, and this Court finds no error in the ALJ's looking to the VE's testimony in coming to his decision."), *adopted by*, No. 5:09CV907, 2010 WL 3092887, at *1 (N.D. Ohio Aug. 6, 2010); *Bratton v. Astrue*, No. 2:06-0075, 2010 WL 2901856, at *5 (M.D. Tenn. July 19, 2010) ("The Court agrees with the Magistrate Judge's finding that enough of the conversation between the ALJ and the VE exists to show that the VE properly considered Plaintiff's limitations and to support the ALJ's reliance on the bench assembler job."). Similar to the foregoing cases, the Court finds here that the inaudible portions of the VE's testimony are not detrimental to meaningful judicial review. The VE clearly identified the job of seed cutter, along with the DOT number, and classified the job as unskilled medium work in response to a properly formed hypothetical question.

The inaudible portion of the VE's testimony goes more toward how the VE calculated the number of available seed cutter jobs. However, Plaintiff does not contest the method utilized by the VE in arriving at the number of jobs available but instead questions whether 14,000 seed

cutter jobs constitutes a significant number. The Court observes there is no "special number" to establish the existence a "significant number" of jobs. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). But the Court has no doubt that 14,000 jobs nationally satisfy the ALJ's step five burden. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'") (collecting cases); *Williamson v. Comm'r of Soc. Sec.*, 55 F. App'x 287, 288 (6th Cir. 2003) (finding a significant number of jobs existed where the VE identified 8,600 jobs in response to the plaintiff's limitations); *Bishop v. Shalala,* 64 F.3d 662 (Table), No. 94-5375, 1995 WL 490126, at *2-3 (6th Cir. 1995) (finding that 6,100 jobs nationally constituted a significant number of jobs); *Lewis v. Sec'y of Health & Human Servs.*, 51 F.3d 272 (Table), No. 94-1807, 1995 WL 124320, at *1 (6th Cir. 1995) (finding 14,000 jobs "constitutes a significant number of jobs in the economy").

Therefore, the Court finds that substantial evidence supports the ALJ's step fiving finding, and Plaintiff's assignment of error is without merit.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge